**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EXPOVISION, INC.<br>4300 Biscayne Blvd.<br>Suite 203<br>Miami, Florida 33137<br><br>  Plaintiff,<br><br>v.<br><br>PLASTICS INDUSTRY ASSOCIATION, INC.<br>1425 K Street, NW<br>Suite 500<br>Washington, DC  20005<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action 1:25-cv-223<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff Expovision, Inc. ("Expovision"), by and through its undersigned counsel, hereby files this Complaint against Defendant Plastics Industry Association, Inc. ("PLASTICS" or "PIA") and alleges as follows:

**INTRODUCTION**

1. This action arises from PLASTICS' wrongful and bad-faith attempt to repudiate a nearly 30-year contractual relationship with Expovision, Inc., its exclusive housing office for the National Plastics Exposition ("NPE") Shows. Since 1997, Expovision has faithfully and successfully managed hotel bookings for the NPE Shows, consistently providing exemplary service to PLASTICS and its exhibitors.

2. Effective August 27, 2024, the parties entered into a valid and binding Letter of Agreement (the "Agreement"), reaffirming Expovision's exclusive role as PLASTICS' housing office for the next three NPE Shows in 2027, 2030, and 2033. *See* **Exhibit 1**, Agreement. This

Agreement was signed by PLASTICS' Chief Operating Officer, who had actual and apparent authority to bind PLASTICS. Expovision has undertaken substantial work for these events, including negotiating and executing dozens of hotel contracts covering tens of thousands of hotel room nights and designating Expovision as the official agent of record for PLASTICS.

3. Despite this longstanding relationship and Expovision's substantial performance under the Agreement, PLASTICS leadership has abruptly decided to repudiate its obligations, asserting baseless claims that the COO lacked authority to execute the Agreement. PLASTICS has refused to further cooperate with Expovision, execute additional required hotel contracts for the 2027 NPE Show, and has taken the position that no enforceable contract with Expovision exists for the 2027, 2030, and 2033 NPE Shows.

4. PLASTICS' true motivation, however, is its desire to re-bid the work to secure a portion of the commissions paid by the hotels for itself by lowering the retained commission from approximately 10% paid by hotel and requiring Expovision to rebate or pay a significant portion of Expovision's earned commissions to PLASTICS, in direct violation of the Agreement's clear terms. PLASTICS' threatened and actual breaches of the Agreement risk Expovision losing more than $4 million in expected commissions for the 2027, 2030 and 2033 NPE Shows, in addition to damaging Expovision's reputation in the marketplace.

5. Expovision remains committed to fulfilling its obligations under the Agreement and continuing to provide the same exemplary service it has delivered for decades. However, PLASTICS cannot unilaterally terminate or disregard a valid and binding contract and attempt to renegotiate better terms by claiming there is no contract, or that its signatory lacked authority, or that it has terminated the contract. Expovision brings this action to enforce its rights under the Agreement, seeking declaratory judgment affirming the Agreement's enforceability, specific

performance requiring PLASTICS to fulfill its obligations, and damages resulting from PLASTICS' breach and repudiation.

## PARTIES

3. Plaintiff Expovision is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 4300 Biscayne Blvd., Suite 203, Miami, Florida 33137.

4. Defendant PLASTICS is a nonprofit corporation organized and existing under the laws of the State of New York, with its principal place of business at 1425 K Street, NW, Suite 500, Washington, DC 20005.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over PLASTICS and venue is proper under 28 U.S.C. § 1391(b) because PLASTICS maintains its principal place of business in Washington, D.C., regularly conducts substantial business within the District, and a substantial part of the events giving rise to this action occurred here.

## FACTUAL ALLEGATIONS

7. Expovision and PLASTICS have enjoyed a longstanding and mutually beneficial relationship since 1997, during which Expovision has served as the exclusive housing office for PLASTICS' NPE Shows.

8. Over the past nearly 30 years, Expovision has successfully managed hotel booking services for nine NPE Shows, earning the trust of PLASTICS and delivering exceptional service to its exhibitors and attendees.

9. The NPE Show is a top-10 trade show in the country, and it is widely known within the industry that Expovision serves as the show's exclusive booking agent for hotels and lodging.

10. Most recently, Expovision served as the exclusive housing agent for PLASTICS' 2024 NPE Show in May 2024. After completing its duties in a satisfactory manner for the 2024 NPE Show, the parties continued working together on hotel contracts for future shows in 2027, 2030, and 2033.

11. In August 2024, <u>PLASTICS requested</u> that the parties formalize a contract for "a multi-show cycle: 2027, 2030, and 2033." PLASTICS indicated that the desire for a formal contract came from its Chief Financial Officer, and asked whether Expovision had a standard contract it could provide. If not, PLASTICS stated that its legal team would provide a proposed contract.

12. Expovision provided PLASTICS its proposed contract, and on or about August 29, 2024, PLASTICS returned the Agreement to Expovision, executed by PLASTICS' Chief Operating Officer. When returning the signed Agreement to Expovision, PLASTICS confirmed that "[the COO] has signed [the Agreement] with Expovision <u>securing partnership through 2033</u>." (emphasis added). PLASTICS then requested that Expovision countersign and return the Agreement so that PLASTICS could proceed with signing hotel contracts secured by Expovision for the 2027, 2030, and 2033 NPE Shows. Expovision signed and returned the fully executed version of the Agreement the same day.

13. As acknowledged by PLASTICS, the Agreement reaffirmed Expovision's appointment as the exclusive housing office for the NPE Shows scheduled for 2027, 2030, and 2033. *See* **Exhibit 1**, Agreement. Based on the commissions received for the 2024 NPE Show, Expovision expects to earn more than $4 million in commissions under the Agreement for the 2027, 2030, and 2033 NPE Shows.

14. At the time of execution of the Agreement, PLASTICS' COO had both actual and apparent authority to bind PLASTICS, as evidenced by his senior executive position, long-standing involvement in the administration of the NPE Shows, and PLASTICS' prior course of dealing with Expovision.

15. Under the Agreement, Expovision is responsible for managing all aspects of housing services for the NPE Shows, including negotiating hotel contracts, coordinating room inventory, and providing on-site support for exhibitors and attendees. *Id.*

16. Expovision is compensated for its services through commission-based payments made directly by the participating hotels. Expovision earns commission and fees or rebates totaling 10% from the hotels for all booked and occupied room nights for each NPE Show. *Id.*

17. The material terms of the Agreement, including but not limited to a commission rate of 10%, are consistent with the terms under which the parties have historically operated for previous NPE Shows, during which Expovision has served as the exclusive housing office. *See* **Exhibit 2**, 2005 Agreement.

18. Expovision has performed substantial work for the 2027 NPE Show, including negotiating and securing numerous hotel contracts that designate Expovision as the "official agent of record." These contracts ensure sufficient hotel room inventory to accommodate attendees and exhibitors and are critical to the success of the event.

19. More specifically, Expovision has secured – and PLASTICS has signed – more than 30 hotel contracts for the 2027 NPE Show, representing approximately 60,000 hotel room nights.

20. Expovision has also begun performing under the Agreement for the 2030 and 2033 NPE Shows, consistent with its contractual obligations. Expovision has negotiated – and PLASTICS has signed – seven hotel contracts for the 2030 and 2033 NPE Shows, representing approximately 35,000 hotel room nights.

21. By executing hotel contracts secured by Expovision for the 2027, 2030, and 2033 NPE Shows, PLASTICS has ratified and acknowledged the validity of the Agreement and designation of Expovision as the exclusive agent of record for all three shows.

22. Despite Expovision's substantial performance under the Agreement, in or about September 2024 PLASTICS began refusing to sign additional hotel contracts negotiated by Expovision for the 2027, 2030, and 2033 NPE Shows.

23. This includes, but is not limited to, additional contracts which have been and continue to be negotiated for the 2027 NPE Show, representing thousands of hotel room nights which are needed for the show to be successful. Many of these contracts are ready to be signed, yet PLASTICS has refused to sign them. Further, Expovision has conducted substantial negotiations for contracts for the 2030 and 2033 Shows and there were numerous contracts in process at the time of PLASTICS' breach.

24. PLASTICS' refusal directly threatens Expovision's ability to secure the necessary room inventory and fulfill its obligations under the Agreement, jeopardizing the success of the 2027 NPE Show, and damaging Expovision's business relationships with participating hotels on top of preventing it from earning commissions on negotiated bookings.

25. PLASTICS has also indicated its intent to repudiate the Agreement entirely, asserting baseless and bad-faith claims that the Agreement is invalid. Specifically, PLASTICS contends that its own COO lacked authority to execute the Agreement.

26. These assertions are demonstrably false. For example, prior to the execution of the Agreement, PLASTICS explicitly solicited Expovision to formalize their partnership for the 2027, 2030, and 2033 NPE Shows. Internal communications with PLASTICS confirm that PLASTICS understood its scope of the Agreement is for three shows. Additionally, PLASTICS' nearly three-decade course of dealing with Expovision reflects that similar agreements were executed in a similar manner as the Agreement.

27. PLASTICS' wrongful conduct places Expovision in an untenable position. By refusing to honor its contractual obligations and undermining Expovision's efforts to prepare for the upcoming NPE Shows, PLASTICS is causing significant and irreparable harm to Expovision's reputation and business relationships. Expovision's ability to perform its duties as the exclusive housing office for the 2027, 2030, and 2033 NPE Shows and earn commissions in excess of $4 million is directly threatened by PLASTICS' conduct. Expovision can corroborate its earning capability through its long history of prior earnings for its work for Plastics on the NPE Shows. Expovision has repeatedly sought to resolve this dispute amicably, but PLASTICS has refused to reaffirm its obligations under the Agreement.

28. Expovision brings this action to protect its rights and to ensure that the parties' valid and binding Agreement is enforced.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

29. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully stated herein.

30. The Agreement is a valid and enforceable contract.

31. Under the Agreement, Expovision was appointed as the exclusive housing office for the NPE Shows scheduled for 2027, 2030, and 2033. Expovision has performed its obligations under the Agreement and remains ready and willing to continue performing under the same.

32. PLASTICS has materially breached the Agreement by refusing to execute additional hotel contracts negotiated by Expovision for the 2027 NPE Show, by failing to cooperate to execute additional contracts for the 2030 and 2033 NPE Shows, and by falsely asserting that the Agreement is invalid.

33. PLASTICS' conduct has disrupted Expovision's ability to perform its contractual obligations, jeopardizing the success of the NPE Shows and damaging Expovision's longstanding relationships with participating hotels and precluding Expovision from earning commissions under the Agreement.

34. As a result of PLASTICS' breach, Expovision has suffered and will continue to suffer substantial damages, including but not limited to lost commissions, harm to its reputation, and disruption of its business operations.

### COUNT II: DECLARATORY JUDGMENT

35. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully stated herein.

36. An actual, present, and justiciable controversy exists between Expovision and PLASTICS regarding the validity and enforceability of the Agreement.

37. PLASTICS has taken the position that the Agreement is invalid, asserting baseless claims that its COO lacked authority to execute the Agreement and that he was unaware it covered three NPE Shows.

38. Expovision contends that the Agreement is valid, binding, and enforceable, consistent with nearly 30 years of contractual dealings between the parties under substantially similar terms. Expovision has relied on the Agreement in performing substantial work for the 2027, 2030, and 2033 NPE Shows.

39. Pursuant to 28 U.S.C. § 2201, Expovision seeks a declaratory judgment affirming that the Agreement is valid, enforceable, and binding upon the parties for the NPE Shows in 2027, 2030, and 2033.

40. A declaration of the Agreement's validity is necessary to resolve this dispute and allow Expovision to fulfill its obligations under the Agreement without further interference.

### COUNT III: ANTICIPATORY BREACH AND REPUDIATION

41. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully stated herein.

42. By refusing to perform its obligations under the Agreement and falsely claiming that the Agreement is invalid, PLASTICS has anticipatorily repudiated its contractual obligations.

43. PLASTICS' refusal to execute additional hotel contracts for the 2027 NPE Show, refusing to cooperate with the planning for the 2030 and 2033 NPE Shows, and its baseless assertions that the Agreement is unenforceable constitute clear and unequivocal indications that it does not intend to honor its commitments for the 2027, 2030, and 2033 NPE Shows.

44. PLASTICS' anticipatory repudiation has caused and will cause Expovision substantial harm, including lost commissions, harm to its reputation, and disruption of its ability to perform under the Agreement.

45. Expovision has suffered further harm from the uncertainty created by PLASTICS' repudiation, which undermines its preparations for the upcoming NPE Shows.

46. Expovision is entitled to damages resulting from PLASTICS' anticipatory breach and repudiation, including but not limited to lost commissions and other consequential damages resulting from PLASTICS' refusal to honor its obligations under the Agreement.

**COUNT IV: SPECIFIC PERFORMANCE (In the Alternative)**

47. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully stated herein.

48. In the event the Court finds that Expovision has no adequate remedy at law to address the harm caused by PLASTICS' breach and repudiation, Expovision requests that the Court require the parties to specifically perform under the Agreement.

49. Specific performance is necessary if the Court finds that the damages incurred, including harm to Expovision's reputation, disruption of its business relationships, and jeopardy to the success of the NPE Shows, cannot be fully compensated through monetary relief.

50. The Agreement's subject matter—Expovision's exclusive role as the housing office for the NPE Shows—is unique and not readily replaceable. PLASTICS' refusal to honor the Agreement threatens Expovision's ability to fulfill its obligations and undermines the planning and execution of the 2027, 2030, and 2033 NPE Shows.

51. In the alternative to monetary damages, Expovision is entitled to specific performance requiring PLASTICS to comply with the terms of the Agreement, including signing

the necessary hotel contracts for the 2027 NPE Show and recognizing Expovision's exclusive role for the 2030 and 2033 NPE Shows.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Expovision, Inc. respectfully requests that this Court enter judgment in its favor and award the following relief:

A. A declaratory judgment affirming the validity and enforceability of the Agreement;

B. An order of specific performance requiring PLASTICS to comply with the Agreement's terms;

C. A preliminary and permanent injunction requiring PLASTICS to comply with the Agreement's terms;

D. Damages in an amount to be determined at trial, including compensatory and consequential damages;

E. Attorneys' fees, costs, and expenses as allowed by law; and

F. Such other and further relief as this Court deems just and proper.

Dated: January 27, 2025               Respectfully submitted,

*/s/David G. Barger*
David G. Barger
DC Bar No. 469095
Robert W. Angle
DC Bar No. 1614979
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Tel.: (703) 749-1391
bargerd@gtlaw.com
anglew@gtlaw.com

*Counsel for Plaintiff Expovision, Inc.*